IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

SAMANTHA J. THOMAS,)
)
        Plaintiff,)
)
  -vs-)    Civil Action No. 20-847
)
KILOLO KIJAKAZI,[1])
COMMISSIONER OF SOCIAL SECURITY,)
)
        Defendant.)

AMBROSE, Senior District Judge

## OPINION

Pending before the Court are Cross-Motions for Summary Judgment. (ECF Nos. 14 and 17). Both parties have filed Briefs in Support of their Motions. (ECF Nos. 15 and 18). After careful consideration of the submissions of the parties, and based on my Opinion set forth below, I am denying Plaintiff's Motion for Summary Judgment (ECF No.14) and granting Defendant's Motion for Summary Judgment. (ECF No. 18).

## I.  BACKGROUND

Plaintiff brought this action for review of the final decision of the Commissioner of Social Security denying her application for disability insurance benefits ("DIB") pursuant to the Social Security Act. Administrative Law Judge ("ALJ"), William J. Bezego, held a hearing on January 15, 2019.[2] (ECF No. 12-2, pp. 130-163). Plaintiff was represented at the hearing. *Id.* On March 1, 2019, the ALJ found that Plaintiff was not disabled under the Act. (ECF No. 12-2, pp. 12-26).

---

[1]Kilolo Kijakazi became Acting Commissioner of Social Security on July 9, 2021, replacing Andrew Saul.

[2]Previous hearings were scheduled and rescheduled so that Plaintiff could seek representation.

After exhausting all administrative remedies, Plaintiff filed the instant action with this court. The parties have filed Cross-Motions for Summary Judgment. (ECF Nos. 14 and 17). The issues are now ripe for review.

## II. LEGAL ANALYSIS

### A. Standard of Review

The standard of review in social security cases is whether substantial evidence exists in the record to support the Commissioner's decision. *Allen v. Bowen,* 881 F.2d 37, 39 (3d Cir. 1989). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." *Ventura v. Shalala,* 55 F.3d 900, 901 (3d Cir. 1995), *quoting Richardson v. Perales,* 402 U.S. 389, 401 (1971). Additionally, the Commissioner's findings of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. §405(g); *Dobrowolsky v. Califano,* 606 F.2d 403, 406 (3d Cir. 1979). A district court cannot conduct a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Palmer v. Apfel,* 995 F.Supp. 549, 552 (E.D. Pa. 1998). Where the ALJ's findings of fact are supported by substantial evidence, a court is bound by those findings, even if the court would have decided the factual inquiry differently. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). To determine whether a finding is supported by substantial evidence, however, the district court must review the record as a whole. *See,* 5 U.S.C. §706.

To be eligible for social security benefits, the plaintiff must demonstrate that he cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months. 42 U.S.C. §423(d)(1)(A); *Brewster v. Heckler,* 786 F.2d 581, 583 (3d Cir. 1986).

The Commissioner has provided the ALJ with a five-step sequential analysis to use when evaluating the disabled status of each claimant. 20 C.F.R. §404.1520(a). The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if the claimant has a severe impairment, whether it meets or equals the criteria listed in 20 C.F.R., pt. 404, subpt. P., appx. 1; (4) if the impairment does not satisfy one of the impairment listings, whether the claimant's impairments prevent him from performing his past relevant work; and (5) if the claimant is incapable of performing his past relevant work, whether he can perform any other work which exists in the national economy, in light of his age, education, work experience and residual functional capacity. 20 C.F.R. §404.1520. The claimant carries the initial burden of demonstrating by medical evidence that he is unable to return to his previous employment (steps 1-4). *Dobrowolsky*, 606 F.2d at 406. Once the claimant meets this burden, the burden of proof shifts to the Commissioner to show that the claimant can engage in alternative substantial gainful activity (step 5). *Id.*

A district court, after reviewing the entire record may affirm, modify, or reverse the decision with or without remand to the Commissioner for rehearing. *Podedworny v. Harris,* 745 F.2d 210, 221 (3d Cir. 1984).

### B. Step 2 - Severe Impairments

Plaintiff first argues that the ALJ erred when he did not find her hand and cellulitis impairments to be severe under step 2 of the analysis. (ECF No. 15, pp. 8-9). At step 2 of the analysis, an ALJ must determine whether the claimant has a medically determinable impairment that is severe or a combination of impairments that is severe. 20 C.F.R. §416.1420(a). The mere existence of a diagnosis or an abnormal reading does not equate to a severe impairment. *Phillips v. Barnhart,* 91 Fed. Appx. 775, 780 (3d Cir. March 10, 2004). To be clear, the question of severity relies not on the particular condition, but on the limitations stemming from that

3

condition. *Id.* An impairment is not severe if it does not significantly limit the physical or mental ability to do basic work activities and/or does not last or is not expected to last for a continuous period of at least 12 months. 20 C.F.R. §§416.920(c), 416.921(a), 416.909, 42 U.S.C. §423(d). If a claimant is found to have a severe impairment, then the ALJ proceeds to the next step. 20 C.F.R. §416.920(a).

Typically, when an ALJ finds at least one impairment to be severe, the failure to find an impairment severe is harmless because the Claimant is not denied benefits at step 2. *Salles v. Commissioner of Social Sec.,* 229 Fed.Appx. 140, 144-145, n. 2, 2007 WL 1827129 (3d Cir. 2007); *Sheeler v. Astrue*, No. 08-64J, 2009 WL 789892, 4 -5 (W.D.Pa. March 24, 2009); *Hanke v. Astrue, No. 12-2364,* 2012 WL 6644201, *4 (7th Cir. Dec. 21, 2012). Rather, the ALJ proceeds beyond step 2. In so doing, an ALJ makes a residual functional capacity (RFC)[3] determination taking into consideration all impairments, including any impairment that is not severe. Thus, an ALJ will consider a plaintiff's severe and non-severe impairments in the evaluation process in determining a plaintiff's RCF.

Here, Plaintiff first argues that the ALJ erred in failing to find her carpal tunnel syndrome, or any condition related to the use of her hands, severe. (ECF No. 15, p. 8). In support of the same, Plaintiff cites to a treatment record that post-dates the relevant time period by almost two years. The ALJ specifically considered Plaintiff's carpal tunnel syndrome and her wrist issues/hand issues as it related to the relevant time period.[4] Citing to a record that post-dates the relevant time period to show severity during the relevant time period is unpersuasive.

---

[3]RFC refers to the most a claimant can still do despite his limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a). The assessment must be based upon all of the relevant evidence, including the medical records, medical source opinions, and the individual's subjective allegations and description of his own limitations. 20 C.F.R. §§404.1545(a); 416.945(a).

[4] To be entitled to DIB, a plaintiff bears the burden of showing disability on or prior to the date last insured. 42 U.S.C. §423(a)(1)(A); 20 C.F.R. §§404.101(a), 404.131(a). The ALJ found Plaintiff

Plaintiff next argues that the ALJ incorrectly stated that "[t]he record is absent evidence of cellulitis aside from claimant's subjective reporting."  (ECF No. 15, pp. 8-9).  In support of the same, Plaintiff asserts that she had been diagnosed with cellulitis.  *Id.* The documents cited by Plaintiff, however, refer to a record that pre-dates the relevant period and to a record that post-dates the relevant period.[5]  *See,* ECF No. 12-4, p. 20 and No. 12-5, p. 40.  Thus, said documents are immaterial to the discussion of whether Plaintiff's cellulitis was severe during relevant period.  Moreover, the mere existence of a diagnosis or an abnormal reading does not equate to a severe impairment. *Phillips, supra.*  Plaintiff does not suggest how her cellulitis resulted in limitations.  As I stated previously, an impairment is not severe if it does not significantly limit the physical or mental ability to do basic work activities and/or does not last or is not expected to last for a continuous period of at least 12 months.  Consequently, I find no merit to this argument.

Additionally, I note that the ALJ found that Plaintiff has the following severe impairments: major depressive disorder, bipolar disorder, anxiety disorder, obesity, history of substance abuse, and degenerative disc disease.  (ECF No. 12-2, p. 15).  The ALJ then proceeded to the next steps.  (ECF No. 12-2, pp. 15-26). Thus, Plaintiff was not denied benefits at step 2.  Rather, the ALJ proceeded beyond step 2.  In so doing, the ALJ acknowledged that in making the RFC determination she considered all symptoms.  (ECF No. 12-2, p. 18).  Therefore, I find any purported error was harmless such that a remand on this basis is not warranted. *Salles v. Commissioner of Social Sec.,* 229 Fed.Appx. 140, 144-145, n. 2, 2007 WL 1827129 (3d Cir.

---

remained insured through December 31, 2016.  (ECF No. 12-2, p. 13).  Thus, the relevant period in this case for purposes of DIB is from June 2, 2015, Plaintiff's alleged disability onset date, through December 31, 2016, her date last insured.

[5] Again, the relevant time period is Plaintiff's alleged date of disability (June 2, 2015) through the date when her insured status expired for purposes of DIB (December 31, 2016).

2007); *Sheeler v. Astrue*, No. 08-64J, 2009 WL 789892, 4-5 (W.D.Pa. March 24, 2009); *Hanke v. Astrue, No. 12-2364,* 2012 WL 6644201, *4 (7th Cir. Dec. 21, 2012).

    C.    **<u>Evaluation of Treating Source Opinions</u>**

Plaintiff argues that the ALJ erred in rejecting treating source opinions. (ECF No. 15, pp. 9-11). The amount of weight accorded to medical opinions is well-established. Generally, the ALJ will give more weight to the opinion of a source who has examined the claimant than to a non-examining source. 20 C.F.R. § §416.927(c)(1); 404.1527(c)(1). In addition, the ALJ generally will give more weight to opinions from a treating physician, "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." *Id.* §§416.927(c)(2); 404.1527(c)(2) . The opinion of a treating physician need not be viewed uncritically, however. Rather, only where an ALJ finds that "a treating source's opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence [of] record," must he give that opinion controlling weight. *Id.* "[T]he more consistent an opinion is with the record as a whole, the more weight [the ALJ generally] will give to that opinion." *Id.* §§ 416.927(c)(4); 404.1527(c)(4) .

If the ALJ finds that "a treating source's opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence [of] record," he must give that opinion controlling weight. *Id.* Also, "the more consistent an opinion is with the record as a whole, the more weight [the ALJ generally] will give to that opinion." *Id.*

6

In the event of conflicting medical evidence, the Court of Appeals for the Third Circuit has explained:

> "A cardinal principle guiding disability determinations is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on continuing observation of the patient's condition over a prolonged period of time.'" Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999)). However, "where . . . the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit" and may reject the treating physician's assessment if such rejection is based on contradictory medical evidence. Id. Similarly, under 20 C.F.R. § 416.927(d)(2), the opinion of a treating physician is to be given controlling weight only when it is well-supported by medical evidence and is consistent with other evidence in the record.

Becker v. Comm'r of Social Sec. Admin., No. 10-2517, 2010 WL 5078238, at *5 (3d Cir. Dec. 14, 2010). Although the ALJ may choose whom to credit when faced with a conflict, he "cannot reject evidence for no reason or for the wrong reason." Diaz v. Comm'r of Soc. Security, 577 F.3d 500, 505 (3d Cir. 2009).

Here, there are three versions of a Residual Functional Capacity Form completed on October 8, 2018. See, ECF No. 12-13, pp. 94-98; No. 12-13, pp. 132-136; and No. 12-13, pp. 30-35. Two copies contain a sticky note covering some of the responses, stating: "Done by Recent Doctor. On 11-27-18, Doctor Fixed (sic) mistakes made my (sic) nurse Practitioner (sic) wen (sic) filling out, also on file at Dr.'s OFFice (sic)." Id. at pp. 94, 132. Neither of those copies contained a signature page identifying the nurse practitioner or the doctor. The third copy contains the name of nurse practitioner Sara Turner and has her signature dated October 8, 2018, but does not contain the sticky note and does not appear to have the "ERROR" notations contained on the other two versions indicating the disability is temporary for 1 year beginning on October 8, 2018. Compare, ECF No. 12-13, pp. 94-98; No. 12-13, pp. 132-136; and No. 12-13, pp. 30-35.

The ALJ noted and discussed the first two versions. (ECF No. 12-2, p. 22). Thereafter, the ALJ found the same unpersuasive stating:

> The sticky note attached indicates that a nurse practitioner completed this form with modifications by a doctor. There is no indication as to the identity of the nurse PR actioner. (sic) It is also unclear as to the identity of the doctor. Although the assembly of the record with which this form was submitted seems to suggest that the form was completed by Dr. Provenzano, such inference is not reliable. Moreover, it is unclear who completed which portions. Regardless of the content of this form, it is unascertainable who opined as to the limitations contained there in and it is unclear as to whether an evaluation was completed for the form. As such, it cannot be established as opinion evidence, and does not support any limitations. (Exhibit 12F, 17F).

*Id.* at p. 24. Plaintiff seems to suggest that remand is warranted because the ALJ rejected it for the wrong reason – that the ALJ should have seen that the third version of this form contained the signature of nurse practitioner Turner. (ECF No. 15, pp. 10-11). I disagree.

To begin with, as set forth above, the ALJ rejected the form for numerous reasons, not just because it did not contain a signature. (ECF No. 12-2, p. 24). Obviously from his decision, if the opinion was from a doctor, knowing the identity is imperative to comparing it to the doctor's records and evaluations. If it was from a nurse practitioner, nurse practitioners are not "acceptable" medical sources. *See,* SSR 06-3p (valid at the time Plaintiff filed her claim). Finally, as the ALJ noted, the form was completed in October 2018 and noted a temporary disability from October 8, 2018 through October 9, 2019, which starts a year and 10 months beyond the relevant time period in this case. Consequently, I find no reason to remand on this basis.

Plaintiff next argues that the ALJ erred in rejecting the opinion "of another treating source, Dr. Rene Miller." (ECF No. 15, p. 11). In support of the same, Plaintiff argues that "Dr. Miller, as a treating source, was in a much better position to opine as to the severity of Thomas's (sic) condition than the ALJ's conclusion drawn from cherry-picked portions of the medical record and reliance upon a non-examining state agency evaluator (T-23)." *Id.* This argument lacks merit. A review of the record reveals Dr. Miller was not a treating source but a one-time consultative

examiner and, therefore, not automatically entitled to controlling weight. Thus, I do not find this argument persuasive.

Moreover, I note the ALJ rejected Dr. Miller's opinion because it was inconsistent with the entire record and inconsistent with her own examination records. (ECF No. 12-2, p. 24). Inconsistency is a valid reason for discrediting evidence. *See,* 20 C.F.R. §§416.927, 404.1527 (Evaluating Opinion Evidence). I find the ALJ's opinion is supported by substantial evidence in this regard. Therefore, remand is not warranted.

D.     **RFC**[6]

Plaintiff argues that the ALJ's RFC determination was not supported by substantial evidence. (ECF No. 15, pp. 12-16). A number of Plaintiff's arguments rely on evidence that falls outside the relevant period of June 2, 2015-December 31, 2016. *Id.* at 12-13. After a review of the same, I find Plaintiff's reliance on said evidence unpersuasive. For example, the March 12, 2018 treatment notes from Mercy Behavioral Health post-date when Plaintiff was last insured. Likewise, the GAF[7] scores all significantly pre-date Plaintiff's alleged onset date. Thus, I find none of these reasons warrant remand.

---

[6] In this case, the ALJ found Plaintiff had the RFC to perform sedentary work with exceptions. (ECF No. 12-2, p. 18).

[7] GAF is an acronym which refers to an individual's score on the Global Assessment of Functioning Scale. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, 32 (4th ed. Text Revision 2000). The scale is used to report the "clinician's judgment of the individual's overall level of functioning" in light of his psychological, social, and occupational limitations. *Id.* The GAF ratings range from 1 to 100. GAF scores are arrived at by a clinician based on his or her assessment of a patient's self-reporting. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, 32 (4th ed. Text Revision 2000). GAF scores do not have a direct correlation to the disability requirements and standards of the Act. *See*, 65 Fed. Reg. 50746, at 50764-65 (2000). In fact, as of May 18, 2013, the American Psychiatric Association no longer endorses the GAF scale as a measurement tool. *See,* Diagnostic and Statistical Manual of Mental Disorders (DMS-V) (5th ed. 2013).

In one sentence, Plaintiff also argues again that the rejection of the "treating source opinions" tainted the RFC. (ECF No. 15, p, 13). Based on my reasoning above, I disagree and find remand is not warranted on this basis.

Additionally, Plaintiff asserts remand is warranted because the ALJ misstated the opinion of the state agency evaluator, Dr. Urbanowicz. (ECF No. 15, pp. 13-15). Dr. Urbanowicz opined, *inter alia,* that Plaintiff could perform simple, routine, and repetitive work; as well as make simple decisions. (ECF No. 12-7, p. 12). The ALJ acknowledged this and found this opinion to be consistent with the medical evidence and Plaintiff's statements. (ECF No. 12-2, p. 24). The ALJ's RFC states that Plaintiff can perform sedentary work with certain exceptions, including, work limited to that "requiring only routine, repetitive tasks, only occasional judgment, decision-making and workplace changes." (ECF No. 12-2, p. 18). Plaintiff argues that the ALJ erred in dropping "simple" from the type of work and decision making. (ECF No. 15, pp. 14-15). Further, Plaintiff argues that Dr. Urbanowicz opined that Plaintiff could meet the mental demands of unskilled work, but that the RFC did not limit Plaintiff to unskilled work. (ECF No. 15, p. 15). Therefore, Plaintiff submits remand is warranted. After a review of the evidence, I disagree.

The ALJ's RFC need not mirror any particular opinion. To be clear, an ALJ is charged with formulating the RFC based on ***all*** of the relevant evidence including, all medical evidence or otherwise. 20 C.F.R. § 416.945(a). Moreover, all of the three jobs identified by the vocational expert ("VE") have SVPs[8] of 2 and two of the three jobs have GEDs[9] of 2 and the other has a

---

[8]SVP stands for Specific Vocational Preparation. SVP is "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." *Appx C,* Dictionary of Occupational Titles. SVP levels 1 and 2 are defined as anything beyond short demonstration up to and including 1 month. *Id.*

[9] GED stands for general educational development. A reasoning level is one of the three divisions of the GED. *Appx C,* Dictionary of Occupational Titles. Reasoning level 1 involves applying commonsense understanding to carry out simple one- or two-step instructions in standardized situations with occasional or no variables on the job. *Id.* Reasoning level 2 involves applying commonsense understanding to

10

GED of 3. ECF 12-2, p. 26). Furthermore, the hearing transcript reveals that the ALJ relied on the VE's opinion as it relates to only unskilled work. *See,* ECF No. 16-6, pp. 155-157. Based on the same, I am able to make a meaningful review and proper review and find the RFC is based on substantial evidence. Thus, remand is not warranted on this point.

Lastly, Plaintiff asserts the ALJ erred in failing to assess her bilateral hand numbness and carpal tunnel syndrome symptoms in determining her RFC. (ECF No. 15, pp. 15-16). After a review of the evidence, I find the ALJ did consider the same in his assessment. (ECF No. 12-2, pp. 18-25). Consideration of the same, however, does not mean a limitation in the RFC. In fact, Plaintiff fails to cite to evidence supporting resulting limitations. Further, I note that a plaintiff need not be pain free or symptom free to be found not disabled. Rather, a plaintiff must still show he/she is unable to perform substantial gainful activity. *Petition of Sullivan*, 904 F.2d 826, 845 (3d Cir. 1990). Consequently, I find no merit to this suggestion.

### E. <u>Vocational Expert</u>

Finally, Plaintiff submits that the ALJ erred by relying vocational expert testimony in response to an inaccurate hypothetical question. (ECF No. 15, pp. 16-17). An ALJ is required to accept only that testimony from the vocational expert which accurately reflects a plaintiff's impairments. *See, Podedworny v. Harris*, 745 F.2d 210 (3d Cir. 1984); *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987). Based on my review of the record, there is substantial

---

carry out detailed but uninvolved written or oral instruction in problems involving a few concrete variables in standardized situations. *Id.* As opposed to a job with a level 2 reasoning, a job with a reasoning level of 3 involves applying commonsense understanding to carrying out instructions furnished in written, oral, or diagrammatic form in dealing with problems involving several concrete variables in or from standardized situations. *Appx C,* Dictionary of Occupational Titles. The Third Circuit has held that a reasoning level of 2 does not contradict a restriction to simple, routine and repetitive tasks. *Money v. Barnhart,* 91 F.Appx. 210, 215 (3d Cir. 2004). Additionally, the Third Circuit has held that "there is no bright-line rule stating whether there is a *per se* conflict between a job that requires level 3 reasoning and a finding that a claimant should be limited to simple and routine work." *Zirnsak v. Colvin,* 777 F.3d 607, 618 (3d Cir. 2014).

evidence that the ALJ's hypothetical questions accurately reflected Plaintiff's impairments. (ECF No. 12-2, pp. 12-26). Consequently, I find no error in this regard.

An appropriate order shall follow.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

SAMANTHA J. THOMAS, )
)
        Plaintiff, )
)
  -vs- )    Civil Action No. 20-847
)
KILOLO KIJAKAZI,[10] )
COMMISSIONER OF SOCIAL SECURITY, )
)
        Defendant. )

AMBROSE, Senior District Judge

## ORDER OF COURT

THEREFORE, this 15th day of July, 2021, it is ordered that Plaintiff's Motion for Summary Judgment (ECF No. 14) is denied and Defendant's Motion for Summary Judgment (ECF No. 17) is granted.

BY THE COURT:

*Donetta F. Ambrose*

Donetta W. Ambrose
United States Senior District Judge

---

[10] Kilolo Kijakazi became Acting Commissioner of Social Security on July 9, 2021, replacing Andrew Saul.

13